**Opinion filed April 25, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00089-CR
_____

**THOMAS RAYMOND SENNETT, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR36885**

### O P I N I O N

The jury convicted Thomas Raymond Sennett of the offense of sexual assault of a child by intentionally or knowingly causing the penetration of K.C.'s sexual organ by inserting his penis into her vagina.[1]  K.C. is Appellant's deaf niece, who was fifteen years old at the time of the assault.  Appellant was twenty-five years old at the time of the offense.    When Appellant first went to trial, the case ended in a mistrial.  Later, Appellant went to trial again, and the jury found him guilty of sexually assaulting K.C.  Appellant elected to have the trial court assess punishment, and the trial court sentenced him to confinement for seven years, but did not assess a fine.  We affirm.

### I.  Issues on Appeal

Appellant has asserted five points of error.  First, Appellant challenges the sufficiency of the evidence. Second, Appellant alleges that, because the evidence was legally insufficient, he

---

[1]TEX. PENAL CODE ANN. § 22.011(a)(2)(A), (c)(1) (West 2011).

was denied due process. Third, Appellant complains that the trial court erred when it (1) denied Appellant's request for a mental health expert and (2) disallowed trial testimony from his computer expert. Fourth, Appellant asserts that the trial court erred in admitting e-mail evidence without proper authentication. Finally, Appellant argues that the State made harmful jury and punishment phase arguments.

## II. The Evidence at Trial

Somewhere around the middle of October 2009, Appellant, his sister, and her fifteen-year-old daughter—K.C., along with K.C.'s sister and a sixteen-year-old cousin, William, drove from Appellant's home in Dallas to his sister's home in Midland. Appellant stayed overnight at his sister's home before returning to Dallas.

K.C. went to sleep that evening in a recreational vehicle that was parked next to the house. Later in the evening, K.C. was startled by a vibration in the recreational vehicle. She thought it was a "ghost" and ran back into the house. K.C. calmed down after she talked with her mother, and K.C. decided to stay in the house and watch a movie with Appellant and K.C.'s cousin, William. Although Appellant had seen K.C. only three or four times in his life, she called him "Uncle Thomas."

William went to sleep on the living room floor during the movie. K.C. and Appellant began to write notes to each other on a notepad. Appellant wrote to her, "Hi. You're beautiful." Appellant then said that he liked her, attempted to hold hands with her, and kissed her on the mouth twice.

Appellant took K.C. outside, and he kissed her again. Appellant put his arms around K.C.'s waist and inserted his finger into her vagina. He had her lie down next to some wooden planks and kissed her again. Appellant removed her jeans and panties. He had sexual intercourse with her by inserting his penis into her vagina. K.C. said, "He started having sex with me. He put his penis in my vagina"; "It hurt"; and "[H]e was moving, thrusting." He told her, "Do not tell" and "[D]on't say anything. Don't tell." Afterward, Appellant told her to put her clothes on and go inside the house. He also put his clothes on and went inside the house. K.C. testified that she thought he had ejaculated. She went into the bathroom in the house and saw some "red" and "white stuff" on her panties.

A few days after the incident, K.C. sent an e-mail to Appellant. Appellant wrote back that she was "beautiful." A day after K.C. sent the first e-mail, she sent another that read, "[H]ey good u remeber love me I love sex u remeber [sic]." The next day, Appellant sent an e-

2

mail to K.C. in which he wrote, "Yeah I'll always remember that. I loved every second of it!!!!!! love ya, Thomas." A few days later, K.C.'s mother checked K.C.'s e-mail account after she spoke to K.C.'s grandmother. K.C.'s mother read the e-mails that K.C. and Appellant had exchanged. K.C.'s mother confronted K.C., and she admitted that Appellant had sex with her. K.C.'s mother called the police and filed a complaint.

Donna Doyle, a sexual assault nurse examiner, examined K.C. Doyle testified that the examination did not show that K.C. had suffered any trauma or injury to her hymen. Because K.C.'s hymen was "estrogenized" and elastic, the results of the tests were not unusual even though K.C.'s history indicated that she had been sexually abused.

### III. Discussion and Analysis

Appellant has asserted five points of error, two of which challenge the sufficiency of the evidence. Appellant's third complaint is that the trial court erred when it denied Appellant's request for a mental health expert and disallowed trial testimony from his computer expert. Appellant complains in his fourth point that the trial court erred in admitting unauthenticated e-mail evidence. Appellant's final complaint is that the State made harmful jury and punishment phase arguments.

#### A. Points One and Two: Sufficiency of the Evidence

We apply the sufficiency standard outlined in *Jackson* and its progeny for Appellant's first two points of error. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We review all of the evidence admitted at trial by both the State and Appellant in the light most favorable to the jury's verdict and decide whether any rational jury could have found each element of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

The testimony of a child victim alone is sufficient to support a conviction for sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (West Supp. 2012); *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (concluding child victim's unsophisticated terminology alone established element of penetration beyond a reasonable doubt). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inferences that are raised in the evidence and presume that the trier of fact resolved such conflicts in favor of the prosecution. *Jackson*, 443

U.S. at 318; *Brooks*, 323 S.W.3d at 894; *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999) (citing *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993)).

We have outlined the testimony that the jury heard from K.C. The jury heard K.C. testify as to what happened the night she was assaulted, and the jury also knew what was in the e-mails between K.C. and Appellant regarding that night. The jury also heard Doyle's testimony about the results of the examination that she performed on K.C. We find that a rational juror could have found the existence of each of the elements of the offense beyond a reasonable doubt. And, because the evidence was sufficient, Appellant was not denied due process. Appellant's first and second points of error are overruled.

### B. Point Three: Failure to Appoint an Expert Witness and Allow Expert Testimony

#### 1. Failure to Appoint a Mental Health Expert

Appellant contends in his third issue that the trial court committed reversible error when it denied his request to appoint an expert. We review the denial of a request for the appointment of a mental health expert for an abuse of discretion. *Ake v. Oklahoma*, 470 U.S. 68, 82-82, 86 (1985); *Griffith v. State*, 983 S.W.2d 282, 287 (Tex. Crim. App. 1998).

Indigent defendants may have access to expert witnesses provided by the State for the preparation of a defense where the defendant has made a preliminary threshold showing with facts or evidence that the expert's testimony will likely be a significant factor in his defense or the State's prosecution. *Ake*, 470 U.S. at 86; *Griffith*, 983 S.W.2d at 286–87. The approval of an expert is warranted where there is a high risk of an inaccurate verdict and a fundamentally unfair trial if the defendant does not have an expert appointed. *Busby v. State*, 990 S.W.2d 263, 271 (Tex. Crim. App. 1999); *Mason v. State*, 341 S.W.3d 566, 568 (Tex. App.—Amarillo 2011, pet. ref'd).

Satisfying the preliminary condition requires more "than undeveloped assertions that the requested assistance would be beneficial." *Williams v. State*, 958 S.W.2d 186, 192 (Tex. Crim. App. 1997). The reasonableness of the trial court's decision is determined when it is made. *Mason*, 341 S.W.3d at 568 (citing *Rey v. State*, 897 S.W.2d 333, 342 n.9 (Tex. Crim. App. 1995)). The defendant has not met his burden of a preliminary threshold showing if his motion does not contain affidavits or other evidence that would support the need for an expert witness for his defensive theory or show how the expert's testimony would help in questioning the State's expert witness and testing the proof. *Rey*, 897 S.W.2d at 341. Where the defendant has made his defensive theory clear and has outlined—with factual allegations supported by

4

affidavits or other evidence—the need for an expert witness, the court should allow the appointment and retention of the expert witness. *Id.*

The State retained a mental health expert, Dr. Ralph Gail Hodges, to testify on the victim's mental and emotional state following the sexual assault. Dr. Hodges testified in the trial that ended in a mistrial. Dr. Hodges did not testify at the second trial. In his second trial, Appellant requested the court appoint a mental health expert in his defense to assist defense counsel in cross-examining the State's expert and in questioning the victim. Appellant sought the appointment of the expert because, in the words of Appellant's counsel, it "would be necessary . . . someone experiencing this from even before the traumatic incident and everything, or alleged traumatic event, this was not something that impacted their current state and that these types of behaviors tend to begin at an early age and tend to escalate as the person goes into puberty and adolescence." Appellant did not attach any affidavits or provide any factual evidence to show how his request for a psychiatrist or a mental health expert aided his defense. Undeveloped assertions do not suffice, and that is all that Appellant provided in his motion. The trial court did not abuse its discretion when it denied the motion for the appointment of a mental health expert.

### 2. Trial Court's Denial of Testimony from Alleged Computer Expert Johnson

The trial court did allow Appellant to retain a computer expert, Scott Johnson, to explore the issue of authenticating the e-mails sent between Appellant and K.C. During the trial, Appellant attempted to qualify Johnson as an expert. The trial court did not allow him to testify. In this part of his third issue on appeal, Appellant claims that the trial court abused its discretion when it refused to allow Johnson to testify. We will review the alleged error for an abuse of discretion. *Vela v. State*; *Rodgers State*; *Jordan v. State*;[2] (criminal law); *Daubert-Robinson*[3] (civil law).

---

[2]*Vela v. State*, 209 S.W.3d 128, 133 (Tex. Crim. App. 2006) (three-step inquiry before admitting expert witness testimony: qualification, reliability, and relevance); *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006); *Jordan v. State*, 928 S.W.2d 550 (Tex. Crim. App. 1996) (reliability and relevance standards for admissibility); *see also Teczar v. State*, No. 11-07-00075-CR, 2008 WL 4602547 (Tex. App.—Eastland Oct. 16, 2008, no pet.) (mem. op., not designated for publication).

[3]*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) (expert testimony on scientific knowledge must be helpful to factfinder and valid and reliable scientific testimony); *see also Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713 (Tex. 1998) (expert must be qualified and reliability standard applies to all scientific expert testimony); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995) (expert witness must be qualified and provide reliable opinions).

The trial court must make three separate inquiries before admitting expert testimony: (1) whether the witness's knowledge, skill, experience, training, or education qualifies him as an expert; (2) whether the subject matter is an appropriate one for expert testimony; and (3) admitting the expert's testimony will assist the factfinder in deciding the case. *Vela*, 209 S.W.3d at 131 (citing *Rodgers*, 205 S.W.3d at 527).

The initial qualification process under *Rodgers* has been outlined as "(1) 'is the field of expertise complex?'; (2) 'how conclusive is the expert's opinion?'; and (3) 'how central is the area of expertise to the resolution of the lawsuit?'" *Vela*, 209 S.W.3d at 131 (quoting *Rodgers*, 205 S.W.3d at 528). Reliability and relevance follow as independent inquiries: reliability focuses on whether the opinions are not only relevant to the issues, but have a foundation in science, while relevance is a broader concept of whether the evidence will assist the trier of fact and is sufficiently tied to the facts of the case. *Vela*, 209 S.W.3d at 132–33; *Jordan*, 928 S.W.2d at 554–55.

Johnson testified that he had a computer consulting business and that he engaged in computer forensics using EnCase forensic software. Johnson indicated that he was completing "training for the NK certification and certified forensic examiner." [4] An inquiry into an expert's qualifications based on experience alone must explore that witness's experience in the particular field in which the witness intends to give an expert opinion. A cursory reference to the witness's credentials is insufficient to support expert status. *Vela*, 209 S.W.3d at 135. When asked the question about what his testimony would involve in the case, Johnson replied that, because he had not been asked any questions, he did not know what his trial testimony would be. When asked again, Johnson testified that he was to determine whether the e-mails allegedly between Appellant and K.C. were authentic. However, Johnson did not review the computers or examine the computers that were allegedly used by Appellant and K.C. He also testified that he could not use the EnCase software on the paper copies of the e-mails. Johnson was not certified and provided no background or experience for analyzing e-mails without the forensic examination of computers using EnCase software. The trial court did not err when it decided that Johnson had not been shown to be qualified by his scientific, technical, or other specialized knowledge to give any opinions in this case.

---

[4] Johnson never explained what NK certification meant.

But even if Johnson was qualified, which we do not hold, Johnson did not provide any scientific methodology that could be verified and replicated in evaluating his opinions. In discussing reliability and relevance, the *Jordan* court held that an eyewitness identification expert who outlined several factors, including "proactive inhibition," "weapon focus," "state dependent learning," and "memory hardening," all of which can affect the accuracy of eyewitness identification, was both reliable and relevant; his testimony "fit" the case where the issue was a disputed identification. *Jordan*, 928 S.W.2d at 552–56.

Unlike the *Jordan* expert, Johnson said that he was unable to collect any information from the e-mail providers involved with Appellant's and K.C.'s e-mail accounts in 2009. He also said that, although he ran tests on "ssjthomas@mail.com" and found that it was not a valid e-mail address in 2011, he had not, and could not, run any tests for 2009. Johnson also testified that the e-mails did not look "authentic" because of font discrepancies and the way the e-mails did not match samples that he had printed. However, he advanced no reliable tests to prove that the e-mails were Microsoft Word documents, as he claimed, and not "authentic" e-mails. The trial court correctly decided that Johnson could not testify as an expert. Further, because he had no personal knowledge of the case, he could not testify as a fact witness. In so ruling, the trial court did not abuse its discretion. Appellant's third point of error is overruled.

*C. Point Four: Admission of E-mail Evidence*

Appellant contends that the trial court committed harmful error when it admitted the e-mails between Appellant and K.C. because the e-mails were not authenticated. In reviewing the trial court's admission of the evidence under an abuse of discretion standard, we will not disturb the ruling if it is within the zone of reasonable disagreement. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). A gatekeeping function under TEX. R. EVID. 104 is undertaken by the trial court to determine whether the evidence is authentic under TEX. R. EVID. 901. *Tienda v. State*, 358 S.W.3d 633, 637 (Tex. Crim. App. 2012) (authentication and admissibility of information on social media site, MySpace).

In conjunction with various circumstances, one can authenticate evidence by appearance, contents, substance, internal patterns, or other distinctive characteristics, including direct or circumstantial evidence. *Shea v. State*, 167 S.W.3d 98, 104–05 (Tex. App.—Waco 2005, pet. ref'd) (citing *Wood v. State*, 18 S.W.3d 642, 647 (Tex. Crim. App. 2000); *Massimo v. State*, 144 S.W.3d 210, 215 (Tex. App.—Fort Worth 2004, no pet.)); *see also Tienda*, 358 S.W.3d at 637. An e-mail may be properly authenticated if its appearance, contents, substance, or other

7

distinctive characteristics, taken in conjunction with the circumstances, support a finding that the document is what the proponent claims it to be. *Tienda*, 358 S.W.3d at 637; *Shea*, 167 S.W.3d at 105; *Massimo*, 144 S.W.3d at 216.

In *Shea*, the court held that e-mails were authentic and admissible where complainant testified that she was familiar with Shea's e-mail address and had received six e-mails from him. *Shea*, 167 S.W.3d at 105. K.C.'s mother testified in this case that Appellant's e-mail address had been "ssjthomas@mail.com" and that she was familiar with it because she had exchanged e-mails with Appellant. Likewise, K.C. testified about her e-mail address and Appellant's e-mail address. K.C. testified that, before the sexual assault, Appellant said she was "beautiful," which is how Appellant referred to her in an e-mail sent in a response to an earlier e-mail that K.C. had sent to him. Further, as we have outlined, the content of the e-mails responded to previous e-mails and referred to matters that only Appellant and K.C. would know. The trial court did not abuse it discretion when it admitted the e-mails. Appellant's fourth point of error is overruled.

### D. Point Five: Improper Jury Argument

Appellant contends that the State's closing argument was improper because the prosecutor said that none of the elements the State had to prove were in question and the State proved its case beyond a reasonable doubt. Appellant further complained that the prosecutor improperly commented during the punishment phase that Appellant had not taken "responsibility for his actions."

When we review alleged improper jury argument, we review the argument in the context of the entire argument and not in isolation. *Castillo v. State*, 939 S.W.2d 754, 761 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd); *Williams v. State,* 826 S.W.2d 783, 785–86 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd).

Jury arguments by the State are proper when they fall into one of four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) response to the defendant's argument; or (4) a plea for law enforcement. *Smith v. State*, 898 S.W.2d 838, 845 (Tex. Crim. App. 1995); *Landry v. State*, 706 S.W.2d 105, 111 (Tex. Crim. App. 1985). We will not overturn a conviction merely because an isolated closing-argument remark was made; not every inappropriate remark requires reversal. *Lagrone v. State*, 942 S.W.2d 602, 619 (Tex. Crim. App. 1997); *Hernandez v. State*, 819 S.W.2d 806, 820 (Tex. Crim. App. 1991). An improper jury argument constitutes reversible error only if, "in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute or injects new

8

facts, harmful to the accused, into the trial." *Felder v. State*, 848 S.W.2d 85, 95 (Tex. Crim. App. 1992).

The prosecutor in this case summarized the evidence in closing argument and stated as a conclusion that all elements had been proven beyond a reasonable doubt. Having reviewed those elements, the prosecutor asserted that the evidence showed the elements were not in question and that the evidence for each element was sufficient proof beyond a reasonable doubt. Appellant objected that the prosecutor's statements were improper, but the trial court overruled the objection. Because the prosecutor's comments were a summation of the evidence, they were not improper, and the trial court did not err in overruling Appellant's objection.

During the punishment phase, the prosecutor stated that he thought Appellant had not "take[n] responsibility for his actions" in the case, and Appellant objected. The trial court sustained the objection and informed the parties that it would not consider the prosecutor's contention in assessing punishment. Appellant received all of the relief that he had requested from the trial court. Appellant's fifth point of error is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


April 25, 2013

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.