**Opinion filed March 8, 2018**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00106-CR

_____

## ISSAC HENRY CASIAS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR45768**

## M E M O R A N D U M   O P I N I O N

The jury convicted Issac Henry Casias of aggravated assault with a deadly weapon (Count I) and burglary of a habitation (Count III) and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of ninety-nine years for each conviction.[1]  The trial court

---

[1]The State voluntarily abandoned Count II, which was a charge of assault involving family violence with a prior conviction.

ordered that the two sentences are to be served concurrently. In a single issue on appeal, Appellant contends that the State made improper closing remarks during both the guilt/innocence phase and punishment phase of trial. We affirm.

*Background Facts*

This appeal arises from a domestic dispute that ended with Appellant stabbing his pregnant girlfriend with a screwdriver multiple times after she refused to continue the relationship. The victim, S.N., testified that she ended the relationship with Appellant a couple of days prior to the attack—after Appellant accused her of infidelity. S.N. testified: "I just told him I didn't want to be with him, [and] he needed to get his stuff and leave. And that's what he did." Even though S.N. voiced her request to end the relationship, Appellant sent her messages and called her "nonstop" seeking to reestablish the relationship. On June 26, 2015, S.N. decided to take her children and stay the night at her mother's home. During the night and into the morning hours, Appellant continued texting S.N and her mother, Valerie Martinez.

On June 27 at approximately 3:00 a.m., Appellant went to Martinez's house and rang the doorbell. Martinez testified that she purposefully did not answer the door. Later that morning at approximately 8:00 a.m., Appellant returned to the home and asked S.N. to step outside to talk. S.N. testified that Appellant appeared to be intoxicated due to his glassy eyes, slurred speech, and unbalanced stance. After S.N. rejected Appellant's apology and his requests to continue the relationship, Appellant responded, "If I can't have you, then I'm just going to have to kill you." S.N. walked back inside the home and locked the door. S.N. repeated Appellant's threat to Martinez. Martinez was in the midst of calling the police when Appellant started banging on the door and ringing the doorbell. With a screen door for protection, S.N. opened the front door, and Martinez told Appellant to leave or she was going

to call the police. Unable to enter through the front door and enraged that the police were being called, Appellant broke a window in the dining room to gain entry into the home.

Appellant climbed through the window and approached S.N. with a screwdriver in his hand. S.N. testified that Appellant asked her "if [she] was ready to die" and proceeded to stab her in the shoulder, back, and head with the screwdriver. Martinez's boyfriend, Federico Venegas, eventually restrained Appellant and forced him out of the home. Appellant then fled the scene in his vehicle. Emergency response personnel took S.N. by ambulance to Midland Memorial Hospital where she was treated for non-life-threatening injuries.

Martinez testified that she stayed at the home to take care of S.N.'s children after S.N. was taken to the hospital. While Martinez was speaking to an officer, Appellant returned to the home and rammed his pickup into vehicles belonging to S.N. and Martinez. With their weapons drawn, officers gave Appellant commands to exit the vehicle. Appellant emerged from the vehicle with a beer bottle in his hand. He refused to comply with the officers' commands, thereby resulting in a physical altercation. Appellant was eventually restrained and transported to the hospital for treatment of the lacerations he suffered from breaking into the home.

While at the hospital, Midland police officer Kyle Demmer interviewed Appellant regarding the attack against S.N. In the cell–phone recording of the interview, Appellant told Officer Demmer that he went inside the house and started stabbing S.N. with a screwdriver. Appellant stated that he tried to kill S.N. because he believed she cheated on him.

Appellant did not testify in his own defense. However, multiple pieces of evidence documenting Appellant's own admissions were admitted, including Appellant's voluntary confession, recorded phone calls from jail, and handwritten

letters. After both sides presented their closing arguments, the jury deliberated and returned a guilty verdict on both counts.

*Analysis*

In his sole issue, Appellant contends that the State's remarks during closing argument to the jury were improper during both the guilt/innocence phase and punishment phase of trial. We begin by noting that these complaints have not been preserved for appellate review. In this regard, Appellant did not make any objections during the State's closing arguments.

"The right to a trial untainted by improper jury argument is forfeitable." *Hernandez v. State*, No. PD-1389-16, 2018 WL 357612, at *3 (Tex. Crim. App. Jan. 10, 2018) (citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)). Thus, "[i]n order to claim on appeal that an instruction to disregard was inadequate to cure erroneous jury argument, the defendant must object and pursue his objection to an adverse ruling." *Id.* To preserve error for an improper jury argument, a defendant should (1) contemporaneously object to the statement, (2) request an instruction that the jury disregard the statement if the objection is sustained, and (3) move for a mistrial if the request for an instruction is granted. *Cooks v. State*, 844 S.W.2d 697, 727–28 (Tex. Crim. App. 1992).

Appellant asserts ten allegations of improper jury argument. However, he has not preserved his complaints for appellate review because he did not object at trial to any of the arguments that he claims were improper. *See* TEX. R. APP. P. 33.1(a); *Hernandez*, 2018 WL 357612, at *3; *Cockrell*, 933 S.W.2d at 89. Moreover, we do not find that any of the challenged instances constitute improper jury arguments by the prosecutor.

Permissible jury argument falls into one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) an answer to the argument

of opposing counsel, or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). Even when an argument exceeds the permissible bounds of these approved areas, it is not reversible unless the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts harmful to the accused. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). The remarks must have been a willful and calculated effort on the part of the State to deprive Appellant of a fair and impartial trial. *Id.* (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)). We must "review the argument in the context of the entire argument and not in isolation." *Sennett v. State*, 406 S.W.3d 661, 670 (Tex. App. —Eastland 2013, no pet.).

In the first and second allegations of improper jury argument, Appellant complains that the prosecutor impermissibly vouched for the strength of the State's case by making the following comments: "This case is simple." "[Appellant] is guilty." "The evidence absolutely shows beyond a reasonable doubt that [Appellant] is guilty of burglary of a habitation and aggravated assault with a deadly weapon." The prosecutor made these arguments immediately prior to summarizing the evidence presented at trial that established Appellant's guilt. A summation of the evidence is not improper jury argument. *See Sennett*, 406 S.W.3d at 670. We conclude that the challenged arguments constitute a summation of the evidence.

In the third allegation of improper jury argument, Appellant asserts that the State shifted the burden of proof to Appellant and impermissibly commented on Appellant's failure to testify by stating, "[Appellant] has shown us that he's guilty of this, and he doesn't care." In determining whether the State's comment constituted an impermissible reference to an accused's failure to testify, the language must be viewed from the jury's standpoint and the implication must be clear.

5

*Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). The test is whether the language used was "manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id.*; *see Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007). Paramount to the analysis is the context in which the comment is made. *See Bustamante*, 48 S.W.3d at 765.

The prosecutor argued: "Again, you have the confession. You have his own words. Growing up, my mom always said, 'Someone shows you who they are, believe them.' [Appellant] has shown us that he's guilty of this, and he doesn't care." When read in context, the complained-of statement does not relate to Appellant's failure to testify. Rather, the State was arguing an inference of guilt by referencing evidence of Appellant's confession, letters, and phone calls wherein Appellant admitted to committing the crime. As such, the prosecutor's argument was not an impermissible comment on Appellant's failure to testify. *See Busby v. State*, 253 S.W.3d 661, 666 (Tex. Crim. App. 2008) ("It was reasonable and proper for the prosecutor to comment on the shifting nature of appellant's custodial statements that were admitted into evidence.").

The subsequent allegations on appeal relate to the State's arguments during the punishment phase of trial. In the fourth allegation, Appellant contends that the prosecutor's statement that "the [defendant] belongs in prison for the rest of his life" is an improper opinion that invades the province of the jury. During the punishment phase of trial, Appellant's brother, Mark Casias, testified as a defense witness. Casias testified to the abusive household that Appellant grew up in and how, notwithstanding such an upbringing, Appellant had a good relationship with his son. On cross-examination, Casias responded, "Love does crazy things," when asked whether Appellant was under the influence when he attacked S.N. The context of

the prosecutor's remark arises in response to Casias's testimony regarding love. The prosecutor stated, "Love doesn't do that. That's not love. That's someone who doesn't respect the laws that we have in society for a reason, to protect people . . . . That's why [Appellant] belongs in prison for the rest of his life, ladies and gentlemen." The State is permitted to recommend a severe punishment to the jury based on the evidence. *See Browne v. State*, 483 S.W.3d 183, 197 (Tex. App.—Austin 2015, no pet.).

Appellant's fifth allegation complains that the prosecutor made an improper argument when he asserted that "S.N. also has a life sentence." Appellant contends this statement was an improper argument because there was no evidence of this fact. During the punishment phase, S.N. testified to the emotional toll Appellant's attack had on her and the children. S.N. testified that her youngest child asks whether "his daddy hurt [S.N.]" every time he sees her scars from the attack. S.N. also testified that her oldest child had to start counseling after witnessing the entire attack. Furthermore, S.N. testified that, because of the attack, she and her children are still scared of Appellant. "[T]he jury is still entitled to consider the full, unvarnished specter of the defendant's actions," and "[e]vidence of the victim's physical, mental, or pecuniary injury is highly relevant when considering the full magnitude of the crime." *Torres v. State*, 92 S.W.3d 911, 921 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Here, the prosecutor's argument was a proper plea for law enforcement and a reasonable inference based upon S.N.'s testimony during the punishment phase. *See Reed v. State*, 421 S.W.3d 24, 31 (Tex. App.—Waco 2013, pet. ref'd).

The sixth allegation pertains to the prosecutor's comment, "So put him where he belongs." Appellant asserts that the State is not permitted to give opinion evidence. We disagree with Appellant's characterization of this argument. The prosecutor was arguing about the evidence, mainly S.N.'s testimony regarding the

7

repercussions the attack had on her and her family, including two of Appellant's own children. Again this was a proper plea for law enforcement based on evidence presented by the State during the punishment phase.

In the seventh allegation, Appellant contends that the prosecutor's rebuttal argument that "[t]his is what [Appellant] will do again if given the chance" is improper because there was no evidence regarding future dangerousness. When read in context, the State was arguing for a harsher punishment since Appellant had in the past been punished to no avail. During the punishment phase, the State introduced evidence that Appellant committed the current offense within two months of being released from prison on a prior aggravated assault conviction. This was a proper plea for law enforcement. *See Rivera v. State*, 82 S.W.3d 64, 69 (Tex. App.—San Antonio 2002, pet. ref'd).

Appellant complains in his last three allegations that the State inflamed the jury and skewed their deliberations toward a harsher sentence with the following rebuttal arguments: "Does a good dad attempt to murder your mother in front of you?" "That family right there has been sentenced to life." "[Appellant] himself says he needs a life sentence." These comments were in response to defense counsel's closing arguments. Appellant's trial counsel asserted that the minimum sentence of twenty-five years was appropriate based on the lack of physical damage S.N. suffered. Furthermore, Appellant's trial counsel read a letter that Appellant wrote to his son and argued that the letter was evidence of the "thoughts and the beliefs of someone that we sentence to the minimum range of punishment and let out when he is an older and more mature man." An answer to opposing counsel's argument is a permissible area of jury argument. *Brown*, 270 S.W.3d at 570.

We conclude that Appellant failed to preserve his issue for review. However, even if we assume Appellant preserved error, the arguments complained of on appeal

do not exceed the bounds of permissible jury argument.  We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


March 8, 2018

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[2]

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.