**Affirmed and Memorandum Opinion filed September 2, 2021.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-19-00805-CR

---

**JESSIE MARTIN PENA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR52099**

---

### MEMORANDUM OPINION

Appellant Jessie Martin Pena appeals his felony conviction for the offense of aggravated assault against two public servants. Appellant challenges the sufficiency of evidence to support his conviction, complains that the trial court erred in failing to grant his motion for mistrial, and disputes the trial court's ruling on his objections to statements made by the prosecutor during closing argument. We affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On August 18, 2018, officers for the Midland Police Department were dispatched to a residence at 509 Ruby Street in response to a 9-1-1 call. The caller had locked himself in the bedroom of the residence and reported a threat of another man whom he said was carrying a gun. In response the call, Officers Callie Ives and Hailee Pepper with the Midland Police Department drove to the residence. Immediately after they exited their patrol car and started toward the residence, they saw appellant step on the porch. Officer Ives asked appellant to come toward the officers. As he began in the opposite direction, she told him to stop and notified him that they were police officers. Appellant then darted through a gate leading to the backyard of the residence and ran toward the back fence. Ives and Pepper chased him into the backyard where he began climbing up the back fence.

Shots were fired; no one was struck.

Two of the shots were fired from Callie Ives's service weapon toward appellant, so in accordance with its usual practice, the Midland Police Department engaged the Texas Rangers to independently lead the investigation. Among other evidence, the investigation yielded a .380 Bersa automatic handgun on the opposite side of the fence appellant had been climbing and one shell casing in the backyard in the area near the fence where appellant abandoned flight and surrendered.

Appellant was arrested and ultimately charged by indictment on two counts of aggravated assault against a public servant based on allegations that appellant was carrying a gun that he pointed and fired at Ives and Pepper as he came down from the fence.

Appellant's trial commenced and he pleaded "not guilty". The State presented the two complainants/responding officers, as well as the other officers

who responded to the call, investigated the scene, and performed forensic analysis of the firearms and casings.

Ives and Pepper both described the events occurring as they perceived them leading up to appellant's arrest. Each of the officers also sponsored their body-cam videos as exhibits which were played to the jury.

Officer Pepper testified that as she saw appellant begin to climb the fence, she could see a firearm in appellants left hand, and that he was pointing it back toward the officers. According to Officer Pepper, appellant fired his weapon first and Officer Ives returned fire twice. She testified that as soon as Officer Ives fired, appellant "completely [let] go and [fell] on his back from the fence."

Officer Ives also testified that she saw appellant had a gun, and that she could see appellant making a motion toward her and Officer Pepper, but did not hear appellant fire his gun before firing her gun. Officer Pepper asked appellant where the firearm was, and he stated it was over the fence. Appellant, who was not injured, was secured in handcuffs and taken to the patrol car by Officer Pepper.

The physical exhibits included the weapons fired and shell casings found, and photographic exhibits showed the scene investigation, including photos of the backyard showing where the physical evidence was discovered.

Appellant presented his mother and two officers not presented by the State. Appellant's mother testified that appellant was right-handed and not ambidextrous. Officer Stephen Truex with the Midland Police Department testified about the collection of the shell casing, noting that the .380 shell casing was found "in between some cracks like the shingles and the wood". Texas Ranger Jeffery Strain testified that he had instructed Ives and Pepper not to draft a written statement. Strain confirmed that no projectiles were found, no trajectory analysis

3

was done, and no three-dimensional imaging or sound analysis was completed.

During Officer Pepper's testimony and during the course of discussing the events depicted on her body-cam, appellant's counsel objected several times to questions seeking to elicit testimony and testimony about Pepper's perception of the first shot and its source as "calling for speculation". The court sustained appellant's objection and instructed the jury to disregard Pepper's answer but refused to grant appellant's request for a mistrial.

The State's final closing arguments drew various objections from appellant's counsel, including his objections: (1) that one of the prosecutor's comments about "Mr. Frost's" disposition toward a round-trip to the moon amounted to "striking at appellant over his lawyer's shoulders"; (2) that in posing the rhetorical question—*"What reason do [Ives and Pepper] have to lie?"*, the prosecutor impermissibly vouched for their credibility as witnesses; (3) that the prosecutor's statement *"That is guilt beyond a reasonable doubt"* made in reference to his summary description of evidence constituted impermissibly vouching for the strength of his own case. The trial court overruled each of these objections.

After deliberating, the jury found appellant guilty of both counts and the court assessed punishment. The Court entered a judgment in accordance with the verdict and a sentence of 35 years Institutional Division of the Texas Department of Criminal Justice on both counts. Appellant contemporaneously moved for new trial and filed this appeal.

## II. ISSUES AND ANALYSIS

Appellant raises five "points of error" on appeal: a challenge to sufficiency of evidence to support his conviction; a due process violation; a challenge to the court's failure to grant a mistrial during Pepper's testimony; a challenge to the

4

court's overruling of one objection asserted during the State's closing argument; a challenge to the court's overruling of two other objections asserted during the State's closing Argument. In substance, to the extent the first and second points of error are distinguishable, they are best treated together as a single issue—("A. Sufficiency of the Evidence"). Appellant's third "point of error" stands as a single issue—("B. Denial of Motion for Mistrial"). Appellant's fourth and fifth points of error involve the court's ruling on three objections during closing arguments; appellant's fifth point of error challenges two discrete court rulings which each demand unique analysis, but those two rulings as well as the ruling challenged in appellant's fourth point of error are governed by the same legal standard pertaining to permissible closing arguments. So we address those last three issues under a single subheading, (C. Alleged Improper Statements of Counsel during Closing Arguments).

## A. Sufficiency of Evidence

In his first point of error, appellant challenges the sufficiency of evidence to support his conviction for aggravated assault of a public servant. In evaluating this complaint, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The jury "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d

5

611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the jury resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

The indictment alleged in two counts, that appellant "intentionally and knowingly threatened [Hailee Pepper and Callie Ives] with imminent bodily injury" and that during the commission of the assault "use[d] and exhibit[ed] a deadly weapon", that Hailee Pepper and Callie Ives were public servants and that he knew that they were public servants. One commits the offense aggravated assault on a public servant by intentionally or knowingly threatening a public servant with imminent bodily injury while using or exhibiting a deadly weapon during the commission of the offense. *See* Tex. Penal Code Ann. § 22.01(a)(2); § 22.02(a)(2), (b)(2)(B). The trial court's jury-charge instructions tracked the indictment (using disjunctives), and the instructions were consistent with the language for aggravated assault of a public servant under the Penal Code.

Intent may be inferred from circumstantial evidence, including acts, words, and conduct. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Jones v. State*, 500 S.W.3d 106, 113 (Tex. App.—Houston [1st Dist.] 2016, no pet.). It is well settled that a threat may be communicated by action, conduct, or words. *See McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984). The Texas Penal Code defines "bodily injury" to mean "physical pain, illness, or any impairment of physical condition." Tex. Penal Code § 1.07(a)(8). A firearm is considered a deadly weapon. Tex. Penal Code § 1.07(a)(17)(A). The act of pointing a loaded gun at someone, by itself, is threatening conduct that supports a conviction for aggravated assault. *Mitchell v. State*, 546 S.W.3d 780, 786 (Tex.

App.—Houston [1st Dist.] 2018, no pet.) *Fagan v. State*, 362 S.W.3d 796, 799 (Tex. App.—Texarkana 2012, pet. ref'd).

Appellant does not dispute his possession of the Bersa .380. Rather, the focal point of appellant's sufficiency challenge concerns proof of his use or exhibition of the gun to threaten the officers; specifically, he contends that the officers presented "completely differing versions of testimony concerning whether defendant/appellant actually pointed a gun at anyone". An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in the better position to judge. *See Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008). Even accepting that there may be conflicting evidence regarding appellant's firing of the weapon, such evidence does not operate to eviscerate the evidence supporting the jury verdict, proving that appellant did point and/or fire the weapon in Ives and Pepper's direction. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017); *see also Jones v. State*, 500 S.W.3d at 113.

The jury heard evidence from both Pepper and Ives that would allow the jury to conclude that appellant intentionally threatened each of the officers of imminent bodily injury. Pepper testified that she heard appellant shoot the first shot, and that seeing his gun caused her to fear for her safety. Ives testified about appellant's conduct that caused her to draw her weapon and fire back. She testified that as appellant began running she observed what she believed was a gun in his hand and that this caused her to reach for her gun. She testified that as appellant began to go over the fence he started making a motion with his gun in his hand coming back toward her and Officer Pepper. She testified that this prompted her to unholster her gun and fire at appellant. In support of Pepper's contention that appellant fired the

7

gun, the state presented evidence of the gun nearby and the existence of a shell casing that was fired from the nearby gun where appellant was described to have pointed and fired gun.

Under the applicable standard of review, a rational trier of fact could have found beyond a reasonable doubt that appellant intentionally or knowingly threatened two public servants with imminent bodily injury by using or exhibiting a deadly weapon during the commission of the offense. *Mitchell v. State*, 546 S.W.3d 780, 786 (Tex. App.—Houston [1st Dist.] 2018, no pet.)

We overrule appellant's first and second points of error.

## B. Denial of Motion for Mistrial

In his third point of error, appellant asserts that the trial court erred in denying a motion for mistrial during Pepper's testimony. We review a trial court's denial of a motion for mistrial under the abuse-of-discretion standard. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Under this standard, we view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it falls within the zone of reasonable disagreement. *Id*. A mistrial is a remedy intended for extreme circumstances, when prejudice is incurable and less drastic alternatives have been explored. *See id*. In determining whether a prejudicial event was so harmful as to warrant reversal on appeal, we consider the prejudicial effect, any curative measures taken, and the certainty of conviction absent the prejudicial event. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

When, as here, a trial court sustains an objection to evidence and instructs the jury to disregard, but denies a defendant's motion for mistrial, the issue is whether the trial court abused its discretion in denying the motion

8

for mistrial because that was the only adverse ruling. *See Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004). Generally, a trial court's prompt instruction to disregard will cure any error associated with testimony referring to extraneous offenses, unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such a damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); *see also Crayton v. State*, 463 S.W.3d 531, 535 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Logan v. State*, 698 S.W.2d 680, 683-84 (Tex. Crim. App. 1985)). A court should review the particular facts of the case in determining whether a given error requires a mistrial. *See Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

In this case, leading up to appellant's motion for new trial, Pepper had already testified that she had not seen where the first gunshot came and yet that in using her ears, she knew it came from appellant.

> Q I mean, when the first pop happened, was that her pulling the trigger?
>
> A No, no. The first pop was him, and then the next two you hear is her.
>
> Q How do you know --
>
> MR. FROST: Your Honor, objection. Again, she already said she didn't see that. We're asking the jury to disregard, and object to speculation again, and we'll ask for a mistrial again.
>
> THE COURT: I'm going to sustain that. I'm going to deny your request for a mistrial. Mr. McCardle --
>
> MR. FROST: Your Honor, ask the Court to instruct the jury to disregard that part of her testimony as well.
>
> THE COURT: To the extent that she has testified about where she saw the shot come from, I'm going to, again, disregard the jury to --

I'm going to instruct the jury to please disregard her answer to Mr. McCardle's redirect.

Let's not have this again.

MR. McCARDLE: I understand, Your Honor.

Although Pepper's testimony as to her field of vision was called into question, she testified she *heard* where the shot came from and there was no dispute she was in the vicinity at the time shots were fired.

Even if we presume that the trial court properly sustained appellant's objection, the evidence in question—officer Pepper's testimony describing a gunshot she heard before Officer Ives fired her gun which she attributed to appellant—was testimony reasonably based on Pepper's sensory perception. Tex. R. Evid. 601. Although the court instructed the jury to disregard Pepper's answer, no curative measure was necessary. To the extent her vision had been limited, the jury was made aware of those limitations through Pepper's testimony and her body cam video played to the jury. Our record reveals no indication that Pepper's hearing ability was impaired or that she was unable to perceive the location of noises and sounds through hearing. Appellant has not shown, nor is it clear from the record how this evidence has a particularly damning character or how it was calculated to inflame the jury. We cannot conclude that the trial court abused its discretion in denying the motion for mistrial.

We therefore overrule appellant's third point of error.

## C. Alleged Improper Statements of Counsel during Closing Arguments

Appellant's fourth and fifth points of error involve three objections asserted and overruled by the trial court during the prosecution's closing arguments.

Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the

10

argument of opposing counsel; or (4) a plea for law enforcement. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007); *Cannady v. State,* 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). Even when an argument lies outside these approved areas, it will not result in reversal unless, in light of the record as a whole, it is "extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

**1. Was the prosecutor's rhetorical question, "*What reason do [the Officers] have to lie?"* impermissible jury argument?**

Under his two-issue fifth point of error, appellant first complains that the trial court reversibly erred when it sustained appellant's objection to the prosecutor posing the rhetorical question "*What reason do [Ives and Pepper] have to lie?".* In its full context, the prosecutor made the following argument:

> You also heard during that cross, it was a long cross yesterday afternoon, I ask y'all to remember that, about the hammer position, about how if the gun was fired the hammer would be back. I brought you this morning his body cam and a photo from it. That hammer is back, the gun has been fired. It's not what Mr. Frost is alluding to he ran up and realized he was going to get caught and threw a gun over the fence. That gun got shot. And you hear from Officer Ives and Officer Pepper, really what reason do they have to lie?

Appellant contends this argument fell outside the bounds of permissible jury argument and constituted improper "bolstering". We disagree. A prosecuting attorney may make arguments as to the truthfulness of a witness's testimony that are based on the evidence presented and reasonable deductions from that evidence. *Ramos v. State*, 419 S.W.2d 359, 368 (Tex. Crim. App. 1967); *Hinojosa v. State*, 433 S.W.3d 742, 763 (Tex. App.—San Antonio 2014, pet. ref'd). In this case, we cannot find that the trial court abused its discretion in permitting the prosecutor to ask the jurors to consider evidence relating to the witnesses' bias,

incentives or other motivations and make reasonable deductions from that evidence.

## 2. Did the prosecutor go beyond permissible jury argument by punctuating his summary of the evidence with the statement: "*That* is guilt beyond a reasonable doubt"?

The other issue under his fifth point of error pertains to a statement the prosecutor made at the conclusion of his summary description of evidence. The context of the objected-to statement—"*That* is guilt beyond a reasonable doubt"—reveals it was made in reference to the prosecutor's summary description of evidence. The prosecutor stated:

> We hear a first gunshot on Officer Pepper's body cam from the direction of the defendant points to one thing. Defendant saying there's a gun on the other side of the fence, that points to one thing. Him saying it's only him, that points to one thing. The Bersa firearm being found where the defendant said it would be points to one thing. The spent shell casing being found near him points to one thing. The spent shell cartridge found near where he was when he would have fired that weapon points to one thing. And that one thing is guilt. That is guilt beyond a reasonable doubt.

As with the previous issue, appellant contends that the prosecutor was "vouching for the strength of his own case" or "bolstering" beyond the limits of permissible jury argument. Viewed in its context, we cannot conclude that the trial court erred in overruling appellant's objection to the statement, as the statement was sufficiently woven into his summary of evidence. *Sennett v. State*, 406 S.W.3d 661, 669 (Tex. App.—Eastland 2013, no pet.) (finding that prosecutor's remark that none of the elements the State had to prove were in question and the State proved its case beyond a reasonable doubt when reviewed in context, following the prosecutor's summary of evidence was a proper summation of evidence); *Yuhl v. State*, 784 S.W.2d 714, 721 (Tex. App.—Houston [14th Dist.]

1990, pet. ref'd) (observing that a prosecutor can state that he believes a defendant is guilty, if that belief is tied to the evidence).

Finding no merit in either issue complained of under appellant's fifth point of error, we overrule his fifth point of error.

**3. Did the prosecutor's comment about appellant's attorney rise to the level of impermissible jury argument, "striking at appellant over his lawyer's shoulders"?**

Appellant's fourth point of error involves the so called "striking-over-the-shoulders" prohibition. Argument that strikes at a defendant over the shoulders of defense counsel is improper. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007). A prosecutor risks improperly striking at a defendant "over the shoulder" of counsel when his or her argument refers to defense counsel personally and when the argument explicitly impugns defense counsel's character. *Gilbert v. State*, 494 S.W.3d 758, 770 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). In his fourth issue, appellant argues that the court reversibly erred by overruling of his objection to such an argument. In closing, the prosecutor stated:

> Mr. Frost wants all this evidence and everything, I'm sure I could have brought you to the moon and back and he would still not be satisfied with the amount of evidence you've been brought. But it's not up to satisfy him.

We are reluctant to speculate about the meaning of the prosecutor's lunar-jury-view remark in the context of a trial for aggravated assault of a peace officer. The trial judge was in a better position to decipher the prosecutor's metaphor and the nature of its impact on the jury. On this record, we cannot conclude the court's ruling erroneous.

But even assuming the remark was inappropriate, courts have observed that not every isolated inappropriate remark made in closing statement requires

reversal. *Lagrone v. State,* 942 S.W.2d 602, 619 (Tex. Crim. App. 1997); *Sennett v. State*, 406 S.W.3d at 670. This remark does not carry the exceptional qualities as one that requires reversal.

Accordingly, we overrule appellant's fourth point of error.

### III. CONCLUSION

Appellant's five points of error provide no basis for appellate relief. Accordingly, we overrule appellant's points of error and affirm the trial court's judgment.


/s/ Randy Wilson
   Justice

Panel consists of Justices Wise, Bourliot, and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).