**Opinion filed January 9, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00122-CR

_____

## TEODORO SILVA JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR56133**

## M E M O R A N D U M   O P I N I O N

Appellant, Teodoro Silva Jr., challenges his convictions for aggravated assault with a deadly weapon, a second-degree felony (Count One), and unlawful possession of a firearm by a felon, a third-degree felony (Count Two). *See* TEX. PENAL CODE ANN. §§ 22.02(a)(2), 46.04 (West Supp. 2024). The jury assessed Appellant's punishment at five years' incarceration for each count, and the trial court sentenced Appellant accordingly, with those sentences running concurrently. In three issues,

Appellant asserts that: (1) the evidence is legally insufficient to support either conviction; (2) he received ineffective assistance of counsel; and (3) the trial court erred in failing to include the statutory definition of "possession" in its charge. We affirm.

*Factual and Procedural History*

On December 19, 2020, Appellant was involved in an altercation with his sister, Myriam Silvas, and her fiancé, Steven Carrasco. At trial, Myriam[1] and Carrasco testified that on the morning of the altercation, they dropped off their ten-year-old daughter at Myriam's parents' home and drove to a nearby town with Myriam's and Appellant's sister, Manuela Armendariz, to purchase furniture. Appellant called Myriam and accused her of not taking care of her daughter. Appellant instructed Myriam to "come home and deal with" her daughter. According to Myriam, Appellant sent "threatening" text messages, and shortly thereafter, she decided to return to her parents' home. While Myriam did not specify what the threats entailed, Carrasco testified that Appellant threatened to "beat [him] up" and made "threats against [their] daughter."

Carrasco, Myriam, and Armendariz arrived at the residence together, and Carrasco entered first, with Myriam close behind him. Carrasco testified that as soon as he stepped inside the residence, Appellant charged him with "fists in the air." Myriam's testimony echoed Carrasco's: "[A]s soon as we walked in, [Appellant] was coming from the hallway charging at [Carrasco] ready to fight him." In an effort to subdue Appellant, Carrasco put Appellant in a "choke hold," pinned him to the floor, and told him to calm down. Minutes later, Appellant's father, Teodoro Silva Sr., walked in and threatened to "beat [Carrasco] up" if he did not

---

[1]We will refer to Myriam Silvas by her first name.

release Appellant. Carrasco testified that, upon his release, Appellant began yelling, "You're dead. You're dead. I'm going to kill you."

At that point, Carrasco exited the residence and Myriam followed. Myriam was on the "front of the porch" waiting for her daughter to come outside when she saw Appellant advancing toward Carrasco with a "long . . . black" gun[2] that has "a place . . . to go against your shoulder." Appellant pointed the gun at Carrasco, who was standing beside his vehicle, and discharged it but missed, and the round struck the back passenger door on the driver's side[3] Teodoro Sr. then intervened and took the gun from Appellant, and Appellant retreated inside the residence.

Myriam testified that her father, Teodoro Sr., unsuccessful in his attempts to stop her from calling 9-1-1, ran to the backyard to hide the gun. The 9-1-1 recording was admitted at trial. In the recording, Myriam tells the 9-1-1 operator that Appellant "shot at [her] vehicle" and he had been disarmed by Teodoro Sr. Myriam was still on the line with the 9-1-1 operator when Appellant left the property in his vehicle, with Teodoro Sr. trailing closely behind Appellant. Tavist Brown, a former Midland County Sheriff's Office patrol deputy, later found Appellant's abandoned vehicle down the road.

Teodoro Sr., Armendariz, and Appellant testified as defense witnesses. Neither Teodoro Sr. nor Armendariz witnessed the events preceding the physical altercation between Carrasco and Appellant. Teodoro Sr. stated that he walked into his home to find Carrasco choking Appellant and he "kicked [Carrasco and Myriam] out." Armendariz acknowledged that she was the last to walk in and see Appellant being held in a choke hold by Carrasco. Armendariz claimed she did not witness

[2]Myriam and Carrasco testified that neither were familiar with guns and did not know the difference between an AK-47 and an AR-15.

[3]Photographs of the vehicle were admitted into evidence.

3

what transpired next.  Both Teodoro Sr. and Armendariz denied hearing a gunshot at any point or seeing Appellant in possession of a firearm.

On cross-examination, the State confronted Armendariz with her written statement given to police on the day of the shooting, and the text messages she sent to Myriam after the shooting.  According to her written statement, Armendariz "was inside the house . . . when the shot was fired," then went outside and "saw dad take an AK-47 away from [Appellant]."  Armendariz wrote that she went "back inside so mom and kids wouldn't come out, and just saw [Appellant] leaving with his child."  Armendariz, however, maintained the veracity of her account at trial.  She explained that in her written statement, she relayed what Myriam told her, rather than what she, herself, had witnessed.  The State then asked Armendariz about sending the following text messages to Myriam after the shooting: (1) "[H]e shouldn't have got out the gun"; (2) "[H]e should have fought, manned up and fight [sic] clean-handed"; and (3) "Now he's asking dad to help him out, f-----g stupid m----------r."  Initially, she explained that she "[did not] remember" texting Myriam, then admitted: "But, I mean, if they're text messages, then I did.  But I don't remember texting her."  Equivocating, she later proffered explanations for each text message.

Appellant was the last to testify at trial.  According to Appellant, on December 19, 2020, he called Myriam after spotting her daughter walking down a dirt road, headed toward the highway.  Appellant said Myriam told him to worry about his own child and hung up on him.  When Carrasco arrived at the residence, Carrasco "storm[ed] in" and, without provocation, put Appellant in a choke hold. Appellant next recalled Teodoro Sr. standing over him, telling Myriam and Carrasco to let him go.  Although Appellant admitted to repeatedly going in and out of the residence between being placed in a choke hold, and to leaving the property in his vehicle, Appellant denied possessing or discharging a firearm at any point.  When asked why he left while Myriam was on the phone with 9-1-1 only to abandon his

4

vehicle a few miles down the road, Appellant testified it was "because [he] was speeding, and they were calling the cops on [him]."

## Sufficiency of the Evidence

In his first issue, Appellant contends that the evidence is insufficient to support his convictions for aggravated assault with a deadly weapon and unlawful possession of a firearm by a felon.

### A. Standard of Review and Applicable Law

In reviewing the sufficiency of the evidence to support a conviction, we must "consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found that the State has proven the essential elements of the crime beyond a reasonable doubt." *Baltimore v. State*, 689 S.W.3d 331, 341 (Tex. Crim. App. 2024) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (adopting the standard of review for a sufficiency challenge as set out by *Jackson*). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021) (quoting *Jackson*, 443 U.S. at 319). Therefore, "[i]f the record supports conflicting inferences, the reviewing court must 'presume that the factfinder resolved the conflicts in favor of the prosecution' and defer to the jury's factual determinations." *Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023) (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. App.—Eastland 2023, no pet.). We defer to the factfinder's role as the

sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007); *Garcia*, 667 S.W.3d at 762 ("[A] reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence.").

We treat direct and circumstantial evidence equally under this standard. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Ruiz v. State*, 631 S.W.3d 841, 851 (Tex. App.—Eastland 2021, pet. ref'd). It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish the defendant's guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *Lee*, 676 S.W.3d at 915. Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, we may not use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Rather, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

We measure the sufficiency of the evidence by comparing the evidence produced at trial against "the elements of the offense as defined by the hypothetically correct jury charge." *Turley v. State*, 691 S.W.3d 612, 617 (Tex. Crim. App. 2024); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Turley*, 691 S.W.3d at 617 (citing *Alfaro-Jimenez v. State*,

6

577 S.W.3d 240, 244 (Tex. Crim. App. 2019)). "The law authorized by the indictment consists of the statutory elements of the offense as modified by the indictment allegations." *Baltimore*, 689 S.W.3d at 341.

As relevant here, a person commits the offense of aggravated assault if he "intentionally or knowingly threatens another with imminent bodily injury," and "uses or exhibits a deadly weapon during the commission of the assault." *See* PENAL §§ 22.01(a)(2), 22.02(a)(2). A "deadly weapon" is defined as "a firearm" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(A), (B).

A person commits the offense of felon in possession of a firearm if he (1) has been convicted of a felony, (2) possessed a firearm, and (3) did so within five years of his release from confinement or supervision. *Id.* § 46.04; *see Ortega v. State*, No. 11-17-00036-CR, 2019 WL 386566, at *2 (Tex. App.—Eastland Jan. 31, 2019, pet. ref'd) (mem. op., not designated for publication) (outlining the elements required to prove the offense of felon in possession of a firearm). The Penal Code defines "possession" to mean "actual care, custody, control, or management." PENAL § 1.07 (39).

B. *Aggravated Assault with a Deadly Weapon*

With respect to his conviction for aggravated assault, Appellant altogether denies possessing a deadly weapon, and argues that the evidence was insufficient to support his conviction because: (1) Myriam and Carrasco were not credible witnesses; (2) "there was a complete lack of expert testimony regarding . . . ballistics and firearm evidence;" and (3) "[n]o firearm or casings were recovered."

Irrespective of Appellant's contentions about the credibility of Myriam or Carrasco as witnesses, we defer to the jury's credibility determinations and may not reevaluate the credibility of the witnesses in our sufficiency review. *See Edward*, 635 S.W.3d at 655; *see also Jaramillo v. State*, No. 11-10-00287-CR, 2012

7

WL 5259266, at *2 (Tex. App.—Eastland Oct. 25, 2012, no pet.) (mem. op., not designated for publication) ("The weight to be given to conflicting testimony is within the sole province of the jury because it turns on an evaluation of credibility and demeanor."). Furthermore, Carrasco and Myriam unequivocally testified that after Appellant physically assaulted Carrasco inside the home, he followed Carrasco outside with a firearm and shot at Carrasco. We have previously held that a victim's testimony alone is sufficient to support conviction for aggravated assault with a deadly weapon. *Padilla v. State*, 254 S.W.3d 585, 590 (Tex. App.—Eastland 2008, pet. ref'd). Though no words accompanied Appellant's actions at the time of the shooting, a threat may nonetheless be communicated by Appellant's conduct including that of pointing a gun as testified to by Carrasco and Myriam. *See United States v. Taylor*, 596 U.S. 845, 855 (2022) ("Of course, threats can be communicated verbally or nonverbally—pointing a gun at a cashier conveys a threat no less effectively than passing a note reading 'your money or your life.'").[4] Myriam's and Carrasco's testimony that Appellant threatened Carrasco with a firearm therefore established the elements of aggravated assault with a deadly weapon. *See* PENAL § 22.02(a)(2). The resolution of conflicting evidence is within the sole province of the jury, and we may not substitute our judgment therefor. *Garcia*, 667 S.W.3d at 762.

---

[4]Notably, several Texas courts have held that "[t]he act of pointing a loaded gun at an individual is, by itself, threatening conduct which supports a conviction for aggravated assault." *Fagan v. State*, 362 S.W.3d 796, 799 (Tex. App.—Texarkana 2012, pet. ref'd); *Boston v. State*, 373 S.W.3d 832, 840 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013); *see also Frizzell v. State*, No. 12-22-00304-CR, 2023 WL 5663234, at *4 (Tex. App.—Tyler Aug. 31, 2023, pet. ref'd) (mem. op., not designated for publication); *Pena v. State*, No. 14-19-00805-CR, 2021 WL 3924100, at *3 (Tex. App.—Houston [14th Dist.] Sept. 2, 2021, pet. ref'd) (mem. op., not designated for publication); *Zandi v. State*, No. 02-19-00437-CR, 2021 WL 1034157, at *4 (Tex. App.—Fort Worth Mar. 18, 2021, no pet.) (mem. op., not designated for publication); *Mancillas v. State*, No. 13-17-00005-CR, 2018 WL 3470637, at *3 (Tex. App.—Corpus Christi–Edinburg July 19, 2018, pet. ref'd) (mem. op., not designated for publication).

Equally unavailing are Appellant's arguments that the evidence was insufficient because witnesses could not describe the type of firearm used, law enforcement did not recover a firearm, and the State proceeded without a ballistics or firearms expert to identify whether the bullet hole in the vehicle door was, in fact, a bullet hole. Courts have consistently upheld convictions for aggravated assault even where the victim was unable to describe the firearm with specificity, no firearm was recovered, and no expert testified. *See Tucker v. State*, 274 S.W.3d 688, 691–92 (Tex. Crim. App. 2008) (concluding expert testimony or a description of the weapon was unnecessary where injuries provided a sufficient basis to infer that a deadly weapon had been used); *Gomez v. State*, 685 S.W.2d 333, 336 (Tex. Crim. App. 1985) (expert testimony was not required to corroborate complainant's testimony even where a weapon is not recovered); *Valmana v. State*, 605 S.W.3d 490, 501 (Tex. App.—El Paso 2020, pet. ref'd) ("To sustain a conviction for aggravated assault based on the use or exhibition of a deadly weapon, the State is not required to introduce the weapon into evidence, nor is it required to provide a description of the weapon or the manner in which it was used."); *see also Sandoval v. State*, No. 11-23-00005-CR, 2024 WL 3817314, at *5 (Tex. App.—Eastland Aug. 15, 2024, no pet.) (mem. op., not designated for publication) ("Law enforcement is not required to recover the alleged firearm or present it as evidence and a complainant does not need to describe the firearm with specificity to support a conviction."). It is enough that Carrasco and Myriam recognized the weapon Appellant possessed as a firearm, and testified that he used it in a threatening manner. *See Riddick v. State*, 624 S.W.2d 709, 711 (Tex. App.—Houston [14th Dist.] 1981, no pet.); *Sandoval*, 2024 WL 3817314, at *5 (concluding the witnesses were not required to testify to "characteristics of the alleged firearm" or to the "manufacturer, model, or specific appearance of the [firearm]"); *see also Bowers v. State*, No. 11-17-00257-CR, 2019 WL 4509715, at *2 (Tex. App.—Eastland

9

Sept. 19, 2019, no pet.) (mem. op., not designated for publication) (affirming aggravated assault conviction where complainant testified that she saw Appellant with a gun even where the gun was never discharged and police did not find a gun).

We conclude that the evidence, as measured against a hypothetically correct jury charge and considered in the light most favorable to the verdict, was sufficient to support Appellant's conviction for aggravated assault with a deadly weapon. *See Turley*, 691 S.W.3d at 617, *Malik*, 953 S.W.2d at 240.

C. *Unlawful Possession of a Firearm*

Appellant does not dispute that the instant offenses occurred within five years of his release from confinement for a felony conviction, namely, possession of a controlled substance. *See* PENAL § 46.04. Instead, he challenges the sufficiency of the evidence to establish that he was in possession of a firearm, citing the "conflicting testimony" and absence of evidence "tying the alleged firearm to the alleged bullet hole."

Although Appellant denied ever possessing a firearm, and Armendariz and Teodoro Sr. claimed that they never saw Appellant in possession of a firearm, the jury heard from Carrasco and Myriam that Appellant carried and discharged a firearm. Once again, we decline to reevaluate the credibility of the witnesses in our sufficiency review, and we defer, as we must, to the jury's resolution of conflicting testimony. *See Starks v. State*, 686 S.W.3d 779, 782 (Tex. App.—Eastland 2024, pet. ref'd); *see also Castillo v. State*, No. 11-18-00164-CR, 2020 WL 4038853, at *4 (Tex. App.—Eastland July 16, 2020, pet. ref'd) (mem. op., not designated for publication) (concluding possession element in unlawful-possession-of-a-firearm offense had been proven even though "Appellant denied that he ever saw or possessed the gun").

Having reviewed the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found Appellant possessed a

firearm. *See Baltimore*, 689 S.W.3d at 341; *Edward*, 635 S.W.3d at 655. We therefore hold that the evidence is sufficient to support Appellant's conviction for unlawful possession of a firearm by a felon. *See Baltimore*, 689 S.W.3d at 341. We overrule Appellant's first issue.

*Ineffective Assistance of Counsel*

In his second issue, Appellant avers that he received ineffective assistance of counsel at trial.

A. *Standard of Review and Applicable Law*

To reverse a conviction based on ineffective assistance of counsel, we must find: (1) counsel's representation fell below an objective standard of reasonableness; and (2) the defendant was prejudiced by counsel's deficient performance. *Andrus v. Texas*, 590 U.S. 806, 813 (2020) (per curiam) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)); *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. "[I]f the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021); *see Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017) (providing that a claim for ineffectiveness of counsel "must be firmly founded in the record[,] and the record must affirmatively demonstrate the alleged ineffectiveness").

Regarding the prejudice prong, we measure prejudice "one of two ways: a reasonable probability of a different outcome or a reasonable probability of a different decision by the defendant." *Swinney v. State*, 663 S.W.3d 87, 90 (Tex. Crim. App. 2022). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011); *see also Jacques v. State*, No. 11-22-00026-CR, 2023 WL 5109749, at *3 (Tex. App.—Eastland

11

Aug. 10, 2023, no pet.) (mem. op., not designated for publication) (observing the same). "This is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." *Walker v. State*, 406 S.W.3d 590, 599 (Tex. App.—Eastland 2013, pet. ref'd) (quoting *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012)). We "will not conclude [that] the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). A defendant's inability to make a showing under either prong defeats a claim for ineffective assistance. *Johnson*, 624 S.W.3d at 587.

B. *Analysis*

At the outset, we observe that Appellant did not file a motion for new trial alleging ineffective assistance of counsel, and the record is undeveloped regarding counsel's trial strategy and decisions. *See id.* We address each of Appellant's allegations of ineffectiveness in turn.

1. *"Declaring Appellant Guilty in Voir Dire" and "Disparaging Appellant in Opening Statement"*

Appellant first argues that his trial counsel was deficient when he declared Appellant "guilty" during voir dire and later disparaged him during opening statements by "categorizing [his] criminal history as bad." Appellant mischaracterizes his trial counsel's statements in both instances. Trial counsel's statements were:

> I've been here for some 40 odd years doing just this, criminal law. I love trial work. I've been recently thinking about maybe I should get me a PR firm. Nobody knows me, okay? And that's okay, particularly with y'all, because you're law-abiding and upstanding citizens. *You don't get involved in these kind of things that would bring you here at this table.* Anyway, let me thank you for coming down here this morning to your courthouse.
>
> . . . .

12

> You're going to hear from [Appellant] himself. You already know he's got a criminal history. That's for drugs. That's not for weapons. That's not for beating up on people. *Drugs are bad, okay*? But that's not for something -- active crime [sic], okay?

(Emphasis added). Rather than merely ignoring them, counsel addressed, up front, potentially troublesome issues that the jury may have considered. Additionally, without a motion for new trial and a hearing thereon, "[c]ounsel gets the benefit of the doubt from a silent record." *Johnson*, 624 S.W.3d at 586. Absent a developed record, Appellant is unable to rebut the presumption that his counsel's statements during trial were more than merely of "questionable competence." *See Prine*, 537 S.W.3d at 117; *Goodspeed v. State*, 167 S.W.3d 899, 903 (Tex. App.—Texarkana 2005, no pet.) (overruling Appellant's contention that trial counsel was ineffective by phrasing cross-examination questions in such a way to impliedly admit Appellant's guilt); *see also Gutierrez v. State*, No. 13-09-00700-CR, 2011 WL 3821666, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 24, 2011, no pet.) (mem. op., not designated for publication) ("The statement appellant quotes is inconclusive to establish deficient performance—it is at least equally likely counsel misspoke."). These statements, however inartful, are not tantamount to declaring Appellant guilty, nor are they a pejorative comment on the severity of Appellant's criminal history.

2. *"Improper Objections to Introduction of Photographs," "Failure to Object to Penitentiary Packet," and "Failure to Object to Evidence of [an] Extraneous Offense"*

Appellant next challenges his trial counsel's objections or lack thereof. Failing to object to admissible evidence, however, is not ineffective assistance. *Poor v. State*, No. 11-22-00221-CR, 2024 WL 4374998, at *14 (Tex. App.— Eastland Oct. 3, 2024, no pet. h.) (op. on reh'g); *see Prine*, 537 S.W.3d at 118 ("Since the court of appeals did not determine that the probation officer's opinion

13

was inadmissible, it should not have held that the trial attorney was deficient for failing to renew his objection to it."); *see also Thomas v. State*, No. 11-14-00355-CR, 2016 WL 7649907, at *4 (Tex. App.—Eastland Dec. 22, 2016, pet. ref'd) (mem. op., not designated for publication) ("[I]t is sound trial strategy for opposing counsel to choose not to object to leading questions when the evidence will come in anyway." (quoting *Wheeler v. State*, 433 S.W.3d 650, 655 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd))).

With respect to Appellant's complaint regarding the admission of the photographs of Carrasco's vehicle, Appellant argues that his trial counsel objected incorrectly and unnecessarily. But, to be clear, Appellant does not dispute that the photographs were otherwise admissible. He therefore has not overcome the presumption of reasonableness as to trial strategy, nor can he show prejudice. *See Johnson*, 624 S.W.3d at 587; *Poor*, 2024 WL 4374998, at *14.

The extraneous offense evidence at issue was likewise admissible. A defendant can "open the door to the admission of other extraneous offenses—including unadjudicated offenses—by creating a false impression regarding the extent of his prior arrests, convictions, charges, or trouble with the police." *Redmond v. State*, 629 S.W.3d 534, 545 (Tex. App.—Fort Worth 2021, pet. ref'd); *see Bowley v. State*, 310 S.W.3d 431, 435 (Tex. Crim. App. 2010) ("[A] party who opens the door to otherwise inadmissible evidence risks the adverse consequences of having it admitted."). Here, Appellant "opened the door" by creating a false narrative about the circumstances of the revocation proceeding that resulted in his conviction for possession of a controlled substance. Specifically, Appellant was untruthful about the circumstances of his probation revocation on direct-examination, stating that his probation had been revoked over "a technical violation," and "the only felony offense [he has] had" was for possession of a controlled substance. Appellant made no mention of his previous arrest for the

14

offense of aggravated assault with a deadly weapon involving his wife and child—a violation to which he pleaded true at the revocation hearing. *See Bowley*, 310 S.W.3d at 435; *see also Kirven v. State*, No. 10-23-00212-CR, 2024 WL 3823846, at *2 (Tex. App.—Waco Aug. 15, 2024, pet. ref'd) (mem. op., not designated for publication) ("When Kirven presented evidence of Kevin Kirven's pending charges, he opened the door, giving the prosecution the right to inquire about relevant extraneous offenses under the exception to the general rule excluding extraneous offense evidence."); *Walker v. State*, No. 11-21-00267-CR, 2023 WL 2602896, at *5 (Tex. App.—Eastland Mar. 23, 2023, pet. ref'd) (mem. op., not designated for publication) ("Appellant 'opened the door' to the admissibility of his prior criminal history when he created a false impression with the jury concerning his knowledge of drug use and his status as a law-abiding citizen.").

As to the penitentiary packet, Appellant argues that the State improperly attempted to authenticate the exhibit using "identifiers contained in the record other than fingerprints." However, the penitentiary packet was accompanied by a certification from the Texas Department of Criminal Justice custodian of records, thus qualifying as self-authenticating under Rule 902(4) of the Texas Rules of Evidence. *See Bruton v. State*, 428 S.W.3d 865, 876 n.51 (Tex. Crim. App. 2014) (citing *Reed v. State,* 811 S.W.2d 582, 584, 586 (Tex. Crim. App. 1991)); *Smith v. State*, 401 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) ("A pen packet is admissible if it complies with either Rule 901 of the Texas Rules of Evidence or, for self-authenticating documents, Rule 902."); *see also Reyes v. State*, No. 11-11-00366-CR, 2013 WL 6178500, at *2–3 (Tex. App.—Eastland Nov. 21, 2013, no pet.) (mem. op., not designated for publication) (concluding that a penitentiary packet certified by the custodian of records was self-authenticated). Further, the identification of a defendant through fingerprints is only one of several ways to link the defendant to a penitentiary packet. *See Smith*, 401 S.W.3d at 921; *Blank v. State*,

172 S.W.3d 673, 675 (Tex. App.—San Antonio 2005, no pet.) (providing a non-exhaustive list of the ways the State may attempt to prove a defendant's prior conviction: "(1) testimony from a witness who personally knows the defendant and the fact of his prior conviction; (2) the defendant's stipulations or judicial admissions; or (3) the defendant's photograph in a penitentiary packet or other official record"); *see also Velazquez v. State*, No. 11-14-00354-CR, 2016 WL 7650548, at *5 (Tex. App.—Eastland Dec. 30, 2016, pet. ref'd) (mem. op., not designated for publication) (observing the same). Here, the penitentiary packet contained Appellant's name, date of birth, driver's license number, and photographs, all of which the State used to link Appellant thereto. Moreover, it was undisputed at trial that Appellant had been convicted of possession of a controlled substance.

Accordingly, Appellant has not shown that his trial counsel rendered ineffective assistance with regard to objections or lack thereof. *See Johnson*, 624 S.W.3d at 586.

### 3. *"Failure to Move for Directed Verdict"*

Appellant further avers that his trial counsel failed to move for a directed verdict. On this record, where Appellant's trial counsel's strategy remains unknown, and we have already concluded that the evidence is sufficient to support Appellant's convictions, it cannot be said that trial counsel's decision not to move for a directed verdict amounted to an outrageous omission. *See Alvarez-Rodriguez v. State*, 678 S.W.3d 317, 324 (Tex. App.—San Antonio 2023, no pet.) (reviewing the evidence before determining trial counsel's decision to refrain to move for a directed verdict was not ineffective assistance of counsel); *Mason v. State*, 598 S.W.3d 755, 785 (Tex. App.—Fort Worth 2020), *aff'd in part and remanded*, 663 S.W.3d 621 (Tex. Crim. App. 2022) ("Because we have already held that the evidence is sufficient to support the trial court's guilt finding, we likewise hold that trial counsel was not ineffective for failing to move for a directed verdict."); *see also Brumley v. State*,

16

No. 11-17-00123-CR, 2019 WL 2307713, at *6 (Tex. App.—Eastland May 31, 2019, no pet.) (mem. op., not designated for publication) (overruling Appellant's claim for ineffective assistance of counsel predicated on counsel's failure to move for a directed verdict when the record was "silent as to any potential trial strategy that trial counsel may have employed"). We conclude that Appellant's trial counsel was not ineffective for failing to move for a directed verdict.

4. *"Failure to Develop Self-Defense Claim"*

Appellant additionally argues that counsel failed to develop a self-defense claim.

A person is justified in using force against another when and to the degree that person reasonably believes the force is immediately necessary to protect himself against another person's use or attempted use of unlawful force. PENAL § 9.31(a) (West 2019). Under Section 9.32(a), as relevant here, a person is justified in using deadly force if he would be justified in using force under Section 9.31, and he reasonably believes that deadly force is immediately necessary to protect himself against another's use or attempted use of deadly force. *Id.* § 9.32(a); *see Lozano v. State*, 636 S.W.3d 25, 32 (Tex. Crim. App. 2021).

Appellant denied that he possessed a firearm, threatened to discharge it, or discharged a firearm. In other words, because Appellant maintained that no force or threat of force occurred on his part—in self-defense or otherwise—to give rise to the aggravated assault offense, it is unclear how a self-defense claim could have been raised by trial counsel. On this record, Appellant cannot rebut the presumption that trial counsel acted reasonably in failing to develop a self-defense claim. *See Johnson*, 624 S.W.3d at 586; *see, e.g.*, *Ex parte Nailor*, 149 S.W.3d 125, 134 (Tex. Crim. App. 2004) (holding that a self-defense instruction is not warranted if the defensive theory is to deny the commission of the crime).

17

### 5. *Improper Closing Arguments*

Appellant's final sub-issue is two-fold; he argues the State's closing arguments, as well as that of his trial counsel, were improper.

Permissible jury argument falls into one of four categories: "(1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to an argument of opposing counsel, and (4) plea for law enforcement." *Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019) (citing *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011)); *see also Muskin v. State*, No. 11-19-00391-CR, 2021 WL 5934688, at *4 (Tex. App.—Eastland Dec. 16, 2021, pet. ref'd) (mem. op., not designated for publication). We consider challenged remarks in the context in which they appear. *See Sennett v. State*, 406 S.W.3d 661, 670 (Tex. App.—Eastland 2013, no pet.); *see also Muskin*, 2021 WL 5934688, at *4.

Appellant asserts that the State engaged in improper argument by "referring [to] facts not in evidence." Particularly, Appellant challenges the State's reference to (1) Appellant's extraneous offense, and (2) a phone call between the State and Armendariz "when nothing about the contents of [the] phone call had been previously put forth in evidence." Having already deemed the former admissible, the State's arguments concerning Appellant's extraneous offense were a reasonable summation and deduction of the evidence, and therefore did not warrant an objection. *See Milton*, 572 S.W.3d at 239; *Sennett*, 406 S.W.3d at 670 ("Because the prosecutor's comments were a summation of the evidence, they were not improper.").

However, Appellant is correct in that there was no basis in the record for the State's argument that Armendariz's testimony at trial deviated from what she previously told the State. Consequently, it cannot be said to be a summation of the evidence or a reasonable deduction therefrom. Though Armendariz confirmed during cross-examination that she spoke with a prosecutor "[o]ver the phone,"

18

neither she nor the State expounded on the contents of the discussion. Even so, we can only speculate as to why counsel did not object in this circumstance. It is entirely possible that counsel made the strategic decision to avoid bringing added attention to the witness's credibility, which would already have been under scrutiny following the introduction of her conflicting statements to law enforcement and her text messages. *See Johnson*, 624 S.W.3d at 586; *see generally Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004) ("From the information available to us, we can only speculate as to why counsel acted or failed to act as they did. Without more, we must presume that counsel acted pursuant to a reasonable trial strategy." (citations omitted)).

We further address Appellant's assertion that his trial counsel's argument that "the bullet hole in question could not have come from the described firearm" was deficient absent any expert testimony. "[S]trategic decisions—including whether to hire an expert—are entitled to a 'strong presumption' of reasonableness." *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (quoting *Harrington*, 562 U.S. at 104). To the extent Appellant intends to challenge trial counsel's decision not to obtain an expert to testify at trial, the record neither establishes counsel's reasoning nor that any particular expert was available and willing to testify favorably for Appellant or to what effect at trial, if any, the testimony would have had. *See Johnson*, 624 S.W.3d at 586. Moreover, trial counsel's argument appeared to be in response to arguments raised by the State, which renders it permissible. *See Milton*, 572 S.W.3d at 239; *Brown v. State*, 270 S.W.3d 564, 571 (Tex. Crim. App. 2008) ("[P]roper jury argument includes answering jury argument made by opposing counsel during the argument itself."). On this record, trial counsel's argument cannot be construed as deficient. *See Swinney*, 663 S.W.3d at 90; *Johnson*, 624 S.W.3d at 586.

We overrule Appellant's second issue in its entirety.

*Charge Error*

In his third issue, Appellant complains that the trial court erred in failing to include the statutory definition of "possession" in its charge.

A. *Standard of Review and Applicable Law*

The purpose of the trial court's charge is to instruct the jurors on the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (per curiam) (quoting CRIM. PROC. art. 36.14). A proper charge consists of an abstract statement of the law and the application paragraphs. *See Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). "Abstract paragraphs 'serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge.'" *Campbell v. State*, 664 S.W.3d 240, 246 (Tex. Crim. App. 2022) (quoting *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012)). The application paragraph, meanwhile, exists as "the 'heart and soul' of the [trial court's] charge." *Mendez v. State*, 545 S.W.3d 548, 554 (Tex. Crim. App. 2018) (quoting *Vasquez v. State*, 389 S.W.3d 361, 366–67 (Tex. Crim. App. 2012)). "The application paragraph is that portion of the [trial court's] charge that applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations." *Vasquez*, 389 S.W.3d at 366.

Legal analysis of a complaint regarding the charge involves two steps; first, we determine whether error exists. *Alcoser*, 663 S.W.3d at 165; *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, we then analyze that error for harm, and the standard of review depends on whether the error was preserved. *Alcoser*, 663 S.W.3d at 165 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). When, as here, the charge error is not preserved by objection at trial, the reviewing court will reverse only upon a showing of "egregious harm." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019); *Almanza*, 686 S.W.2d at 171. Harm is assessed in consideration of four factors:

"(1) the charge itself; (2) the state of the evidence including contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole." *Maciel v. State*, 689 S.W.3d 609, 615–16 (Tex. Crim. App. 2024). Regardless of the degree of harm required to be shown, "to obtain a reversal for jury charge error, the appellant must have suffered actual harm and not merely theoretical harm." *Reed v. State*, 680 S.W.3d 620, 626 (Tex. Crim. App. 2023). "[W]hen 'a record reveals a risk of harm that is so small that it may properly be characterized as not remotely significant, or where the risk of harm is almost infinitesimal, any harm resulting from the error is only theoretical harm.'" *Maciel*, 689 S.W.3d at 615 (quoting *French v. State*, 563 S.W.3d 228, 239 (Tex. Crim. App. 2018)).

B. *Analysis*

The trial court must provide the jury with the statutory definitions that affect the meaning of the elements of an offense. *Burnett v. State*, 541 S.W.3d 77, 81 (Tex. Crim. App. 2017); *see* CRIM. PROC. art. 36.14; *see also Ortega v. State*, No. 11-22-00098-CR, 2023 WL 5622310, at *3 (Tex. App.—Eastland Aug. 31, 2023, no pet.) (mem. op., not designated for publication) ("[A] trial court's failure to define the statutory elements in the abstract portion of the charge may constitute error."). Here, Appellant was charged with unlawful possession of a firearm, which required the State to prove, in relevant part, that Appellant has been convicted of a felony and was in possession of a firearm "after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony." PENAL § 46.04(a)(1). As noted *supra*, "possession" is defined as "actual care, custody, control, or management." *Id.* at § 1.07(39). Appellant argues, and the State concedes, that the trial court was obligated to include the statutory definition for "possession" in its charge and it erred in failing to do so. *See Burnett*, 541 S.W.3d at 81; *see also Ervin v. State*, No. 11-19-00228-CR, 2021 WL 2462022, at *3 (Tex.

21

App.—Eastland June 17, 2021, no pet.) (mem. op., not designated for publication) (noting that "possession" is an essential element of the offense). We agree. However, because Appellant did not object to this error at trial, we next determine if it caused egregious harm such that Appellant was deprived of a fair and impartial trial. *See Chambers*, 580 S.W.3d at 154.

1. *The Charge as a Whole*

The first factor requires that we review the trial court's charge in its entirety. *See Maciel*, 689 S.W.3d at 616; *Arevalo v. State*, 675 S.W.3d 833, 854 (Tex. App.—Eastland 2023, no pet.). The abstract portion of the charge instructed the jury that:

> [a] person commits the offense of UNLAWFUL POSSESSION OF A FIREARM if the person intentionally or knowingly possesses a firearm after conviction of a felony and before the fifth anniversary of the person's release from confinement following conviction of the felony.

Definitions for "firearm," "intentionally," and "knowingly" were included in the abstract portion of the charge. Meanwhile, the application paragraph instructed the jury as follows:

> [W]ith respect to the offense of UNLAWFUL POSSESSION OF A FIREARM as charged in count 2 of the indictment and bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the Defendant, TEODORO SILVA JR, on or about the 19TH DAY OF DECEMBER, 2020 in the County of Midland and State of Texas, as charged in the indictment, did then and there intentionally or knowingly possess a firearm, to-wit: an AR 15 or similar firearm, after the Defendant was convicted on the 7th day of March, 2018 of the offense of Possession of a Controlled Substance in Penalty Group 1 in the 142nd District Court of Midland County, Texas, in a case docketed as CR42787 and entitled The State of Texas vs Teodoro Silva and the said possession occurred before the fifth anniversary of the Defendant's release from confinement for the said prior felony conviction, you will find the Defendant guilty of the offense of UNLAWFUL POSSESSION OF A FIREARM as charged in count 2 of the indictment and so say by your verdict, but if you do not so believe or if you have a reasonable doubt thereof, you will acquit

22

the Defendant of the offense of UNLAWFUL POSSESSION OF A FIREARM as charged in count 2 of the indictment, and say by your verdict "not guilty" to that offense[.]

Appellant posits that the charge did not adequately inform the jury that to "possess" the firearm, the State must have shown that Appellant maintained care, custody, control, or management of the firearm. The application paragraph and the abstract paragraph, however, otherwise tracked the required statutory language. *See* PENAL § 46.04. This is therefore a neutral factor on the issue of harm to Appellant. *See Alcoser*, 663 S.W.3d at 170.

### 2. *State of the Evidence*

The second factor focuses on the evidence presented at trial. *Id.* The evidence, as summarized above, pitted Carrasco and Myriam's recollection of the facts against that of Appellant's, Teodoro Sr.'s, and to a degree, Armendariz's. Appellant's defensive strategy, however, was to deny the allegations in their entirety and assert that Carrasco and Myriam fabricated the shooting altogether. Because the central issue at trial was credibility, not whether Appellant possessed a firearm within the meaning of the statute, the outcome would not likely have been different even if the charge had included a definition for "possession." *See Alcoser*, 663 S.W.3d at 170. This factor weighs against a finding of egregious harm. *See id.*

### 3. *Arguments of Counsel*

When considering the third factor, we must determine whether any statements made by the State or Appellant's trial counsel aggravated or ameliorated the complained-of charge error. *See Arrington v. State*, 451 S.W.3d 834, 844 (Tex. Crim. App. 2015). Here, neither the State nor Appellant's trial counsel defined possession in either their opening statements or closing arguments. However, once more, the arguments of Appellant's trial counsel mirrored the defense witnesses' testimony, with Appellant contending throughout trial that no firearm existed for

23

him to possess. Because defining "possession" would not likely have resulted in a different outcome, this factor weighs against a finding of egregious harm. *See Poor*, 2024 WL 4374998, at *9.

### 4. *Any Other Relevant Information*

The fourth "catch-all" factor requires that we consider any other relevant information in the record that would assist in our determination of whether Appellant suffered egregious harm as a result of the alleged error. *Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171.

Several courts, including this court, have held that when a statutory term is undefined, we may assume the jury would consider the commonly understood meaning in its deliberations. *Granger v. State*, 584 S.W.3d 571, 578 (Tex. App.—San Antonio 2019, no pet.) ("We conclude the jury could reasonably determine, based on the common meaning of 'dating relationship,' that Granger and Guerrero were in a dating relationship as defined by Texas Family Code section 71.0021(b)."); *see Olveda v. State*, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983); *see also Saucedo v. State*, No. 11-22-00227-CR, 2024 WL 1447285, at *3 (Tex. App.—Eastland Apr. 4, 2024, no pet.) (mem. op., not designated for publication) ("We assume the jury applied the commonly understood meaning of 'know' in the absence of a statutory definition."); *Gutierrez v. State*, No. 11-20-00166-CR, 2022 WL 2165531, at *4 (Tex. App.—Eastland June 16, 2022, no pet.) (mem. op., not designated for publication) ("[W]e presume that the jury applied the common meaning of theft and attempted theft in its deliberations."). Given that the statutory definition of "possession" does not substantively differ from the common usage or meaning of the term "possession," we further conclude that the jury could have reasonably understood and applied its meaning during deliberations. *Compare* PENAL § 1.07(39) (defining "possession" as "actual care, custody, control, or management") *with Possession*, Merriam-Webster.com, https://www.merriam-

24

webster.com/dictionary/ possession (last visited Jan. 6, 2025) (defining "possession" as "the act of having or taking into control").

We conclude that because the statutory definition of "possession" is not substantially different from the word's common usage, the absence of a definition in the trial court's charge did not vitally affect Appellant's defensive theory, the very basis of his case, or deprive him of a valuable right. *See Alcoser*, 663 S.W.3d at 165, 171. Consequently, he was not egregiously harmed by the lack of a definition for "possession." *See id.* at 171. We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgments of the trial court.


W. BRUCE WILLIAMS
JUSTICE


January 9, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.